Kyle McLean (SBN 330580)
Lisa R. Considine (*pro hac vice*)
David J. DiSabato (*pro hac vice*)
Leslie Pescia (*pro hac vice*)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
kmclean@sirillp.com
lconsidine@sirillp.com
ddisabato@sirillp.com
lpescia@sirillp.com
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKKI COOK and DANIELLE MOORE individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>L.L. BEAN INC.,<br><br>Defendant | **Civil Action No.: 5:24-cv-02332**<br><br>**FIRST AMENDED COMPLAINT – CLASS ACTION**<br>1. **FRAUD**<br>2. **NEGLIGENT MISREPRESENTATION**<br>3. **BREACH OF CONTRACT**<br>4. **UNJUST ENRICHMENT**<br>5. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**<br>6. **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**<br>7. **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,** |

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

**BUS, & PROF. CODE**

**8. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**JURY TRIAL DEMANDED**

Plaintiffs Nikki Cook and Danielle Moore ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant L.L. Bean Inc. ("L.L. Bean" or "Defendant"), and allege based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## <u>NATURE OF THE ACTION</u>

1.      With the sheer volume of online products being offered, consumers rely on accurate pricing to make informed decisions. Unfortunately, many retailers engage in deceptive and misleading practices by advertising products as "sales" or "markdowns" by showing significantly inflated "reference prices" or "regular prices" that are rarely, if ever, actually charged. These fake reference prices fool consumers into thinking they are

getting a great deal at the "sale" price, when in fact, they have merely been
tricked by the retailer, and in reality the consumer is paying the same amount,
or even more than, the usual price of the item. The effect of this unlawful
tactic is to set consumers' perception of the value of a product at a grossly
inflated level, thereby inducing consumers to unwittingly pay more for the
product than they might normally pay. Furthermore, researchers have found
that when consumers believe that the supposedly reduced price will end soon,
they are more likely to buy now, rather than wait or comparison shop, and
buy someplace else.[1]  But in many instances, the reference price is not a true
discount.

2.      By way of background, a marketing strategy that businesses
often use to promote sales is known as "strikethrough pricing" or "false
reference pricing," whereby a seller advertises the "former" price of a
product, which is then crossed out and replaced with a purportedly
"discounted" price, either next to the stricken price or revealed after a
consumer adds the item to his or her online shopping cart.

3.      Such schemes have at least two purposes: (1) to induce

---

[1] Patrick Coffee, Thought You Saved $60 on that Vacuum Cleaner? Think
Again, Wall St. J. (Aug. 24, 2023), available at:
https://www.wsj.com/articles/thought-you-saved-60-on-that-vacuum-
cleaner-think-again-c89ce344 (Last accessed March 27, 2025).

**FIRST AMENDED CLASS ACTION COMPLAINT**

consumers to make a purchase under the false belief that they are getting a bargain, and (2) to create a false sense of urgency that the purported "sale" will end and then the consumer will have to pay the "full" price for the item. In reality, however, the consumer is not getting a bargain—he is simply buying it at or around the prevailing market price—and the "sale" is perpetual because the lower "sale" price rarely, if ever, returns to the higher "former" price.

4.      Highlighting how these false sales have become a true problem in the marketplace, the Federal Trade Commission ("FTC") created a rule prohibiting the practice. 16 C.F.R. § 233.1. The FTC identified this practice as a form of "deceptive pricing" that denies consumers the value of the bargain that they thought they were receiving.

5.      L.L. Bean has engaged in just such a deceptive pricing scheme. L.L. Bean advertises perpetual or near perpetual discounts on many of its products, supposedly offering discounts of up to 50% off L.L. Bean's self-created, fictitious reference prices. L.L. Bean represents to consumers that its reference price is the "regular" or "normal" price of the item, which functions as a new and inflated reference point from which consumers discount their "savings" on various products.

6.      L.L. Bean's reference prices are false because L.L. Bean rarely,

**FIRST AMENDED CLASS ACTION COMPLAINT**

if ever, offers the products for the reference price. Instead, the inflated reference prices allow L.L. Bean to continually advertise "sale" events and product discounts in order to induce consumers into purchasing products. In reality, the "sale" price is the price at which L.L. Bean regularly sells the product, but the consumer has been tricked into thinking she found a great discount.

7.        To illustrate, below is a February 19, 2024, screengrab from L.L. Bean's for Men's Handsewn Moccasins, Camp Moc, color: River Rock, which are listed as "on sale" for $69.99 from an original price of $99.00.



8.        Below is a screengrab of the same product, taken from LL Bean's website more than four months later, on June 24, 2024, which still reveals the

**FIRST AMENDED CLASS ACTION COMPLAINT**

inflated reference price of $99.00 and false discount price of $69.99:



9.      L.L. Bean's practice of falsely inflating reference prices in order to give the illusion of higher value, bigger discounts, and a false sense of time pressure, constitutes false advertising, and is an unfair and deceptive practice under California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750 *et seq.*

10.      Accordingly, Plaintiffs, on behalf of themselves and the Classes (as defined below) now seek to hold L.L. Bean accountable for its unfair, deceptive, and unlawful policy of displaying false or misleading discount or "sale" prices. Plaintiffs seek to bring claims on behalf of a Nationwide Class and a California Subclass (collectively "Classes") of consumers who purchased falsely discounted products on L.L. Bean's website and are seeking, among other things, to recover damages and injunctive or

declaratory relief ordering Defendant to disgorge all revenues it has unjustly received from the proposed Classes due to its intentional and unlawful practice of using false reference prices and false discounts.

## PARTIES

11.     Plaintiff Nikki Cook is an individual citizen of the State of California and a natural adult person who resides in San Bernardino County, California. Plaintiff Cook was present in San Bernardino County when making and receiving her purchase from Defendant's website.

12.     Plaintiff Danielle Moore is an individual citizen of the State of California and a natural adult person who resides in Fresno County, California. Plaintiff Moore was present in Fresno County when making and receiving her purchase from Defendant's website.

13.     L.L. Bean Inc. is a privately held corporation. L.L. Bean currently has, and at all relevant times herein had, its headquarters and principal place of business in Freeport, Maine. L.L. Bean is a retail provider that sells clothing and outdoor recreation equipment in stores and online via its website. At the close of its 2023 fiscal year, L.L. Bean had an annual net revenue totaling $1.7 billion.[2]

---

[2] *See* L.L. Bean Announces 2023 Year End Results & Employee Contributions (March 14, 2024), https://www.llbean.com/llb/shop/518872?page=llbean-

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

## JURISDICTION AND VENUE

2

3       14.     The Court has subject matter jurisdiction over this action under

4   the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in

5   controversy exceeds $5 million, exclusive of interest and costs. Upon

6   information and belief, the number of class members is over 100, many of

7   whom have different citizenship from Defendant. Thus, minimal diversity

8

9   exists under 28 U.S.C. § 1332(d)(2)(A).

10

11      15.     This Court has personal jurisdiction over Defendant because it

12  can be found in and operates in this District and generally conducts

13  substantial business in the State of California. Defendant has sufficient

14  minimum contacts in California, and/or otherwise intentionally avails itself

15  to the California market through the operation of its e-commerce website

16

17  within the State of California, knowingly and intentionally shipping goods

18  into the State of California for decades, and a substantial part of the unlawful

19  business practices which give rise to this action occurred in this District.

20

21      16.     This Court may exercise personal jurisdiction over Defendant to

22  the fullest extent allowed under the Federal Due Process Clause. Defendant

23  has certain minimum contacts with the State of California. Defendant has and

24

25

26  _____

27  announces-2023-year-end-results-and-employee-Contributions    (last
    accessed March 31, 2024).

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

continues to purposefully perform some acts or consummate some transactions in the State of California, and Plaintiffs' claims arise from, or are connected with, Defendant's transactions. The assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the State of California, the relative convenience of the parties, the benefits and protection of laws of the State of California afforded the respective parties, and the basic equities of the situation.

17.    Defendant L.L. Bean, Inc. operates a website, www.llbean.com, by which L.L. Bean advertises and sells its goods in California. The website is regularly viewed by and used to purchase products by consumers in California.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. For example, Plaintiff Cook was in San Bernardino County, California when she saw the false discount representations on L.L. Bean's website and placed her order on Defendant's website after relying on the deceptive advertised price displayed. Defendant shipped the goods Plaintiff Cook purchased to her home in California.

## **FACTUAL BACKGROUND**

**FIRST AMENDED CLASS ACTION COMPLAINT**

## I.    FALSE REFERENCE PRICING SCHEMES

19.    Consumers' reactions to sales and to false sales are well studied in academic literature. Research shows that reference prices, such as those used by Defendant, materially impact consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[3]

20.    Retailers like Defendant can benefit substantially from false discounting schemes because "framing a price increase as a discount can not only allow the firm to get higher margins but also increase sales."[4]

21.    This deceptive practice involves three elements, most easily shown through an example using a retailer that wants to sell a blue shirt whose market value is $35. First, the retailer advertises an inflated "reference price" or the "strike through price" for that shirt, which the retailer wants the consumer to believe is that shirt's normal price. For purposes of the example,

---

[3] Urbany, Joel E., William O. Bearden and Dan Weilbaker (1988), "The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search," Journal of Consumer Research, 15 (June), 95–110; Chandrashekaran, Rajesh (2004), "The Influence of Redundant Comparison Prices and Other Price Presentation Formats on Consumers' Evaluations and Purchase Intentions," Journal of Retailing, 80 (1), 53–66.
[4] Staelin et al., Competition and the Regulation of Fictitious Pricing, 87 J. MKTG., 826, 835 (2023) (emphasis added).

**FIRST AMENDED CLASS ACTION COMPLAINT**

that price is $50. The problem is that the retailer has not actually sold the shirt for $50, nor could it do so because the market will not bear such an inflated price when other similar blue shirts are sold for less. Instead that $50 price is fictitious, created by the retailer in order to show the consumer the second element in the fraud: a supposed "discount" off that fictitious reference price. In this example, that amounts to a 30% discount. Then, in the third element, the retailer presents the consumer with the "new" discounted price of $35 for the blue shirt, which the retailer wanted to sell the shirt for all along. As part of this scheme, the retailer wants the consumer to believe that the shirt is worth $50 and that the consumer is getting a deal by actually paying $15 less, which induces the consumer to make a purchase under the false belief that she is getting a bargain on a more valuable shirt (30% off a $50 product in this example) and creates a false sense of urgency that the purported "discount" or "sale" will end and the consumer will have to pay the "reference price" for the shirt. Using this deception, retailers can even falsely induce consumers to pay prices above the market price, for example $40 for the blue shirt, because the consumer still believes she is getting a deal, i.e., a 20% markdown.

22.     Accurate reference prices play an important role in consumers' ability to compare products because they allow consumers to make informed

**FIRST AMENDED CLASS ACTION COMPLAINT**

decisions by comparing one retailer's prices to another. This is especially true where the consumer is comparing similar, though not identical, products such as two white T-shirts. In such circumstances, reference prices increase a consumer's interest in the product by increasing the consumer's estimate of savings offered by one retailer.[5] "[A] higher plausible reference price . . . consistently makes the offer appear to be a better value than if no reference price appears."[6] Therefore, when a retailer advertises its products with inflated reference prices, consumers are harmed because they are denied the ability to accurately compare prices across the market, and they imbue the advertised product with a false sense of value that they would not have developed if the inflated reference price had not been listed.

23.        Retailers "mark up the prices and then offer seemingly deep discounts to make the deals look more attractive," reports Jie Zhang, a professor of marketing at the University of Maryland.[7] "This is a form of deceptive pricing."[8]  This tactic is meant to trick shoppers into thinking they

---

[5] Blair, Edward A. and E. Laird Landon, Jr. (1981), "The Effects of Reference Prices in Retail Advertisements," Journal of Marketing, 45 (Spring), 61-69.
[6] Urbany, The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search, *supra* n. 1 at 106.
[7] Jaclyn Peiser, *A common, illegal tactic retailers use to lure consumers*, The Washington Post (Nov. 21, 2023), available at: https://www.washingtonpost.com/business/2023/11/21/fake-sale-deceptive-pricing/ ("Washington Post Article") (Last accessed March 27, 2025).
[8] *Id.*

**FIRST AMENDED CLASS ACTION COMPLAINT**

1    are getting a better price than usual.

2        24.        Accurate reference prices play an important role in consumers'

3    ability to compare products because they allow consumers to make informed

4    decisions by comparing one retailer's prices to another. Luc Wathiue, a

5    professor of marketing at Georgetown University, says that this is an effective

6
7    technique because shoppers usually aren't tracking prices that closely.  "As

8    consumers, we don't know what the right price should be, so we use cues in

9    the environment to determine whether the price that we have in front of us is

10
11   advantageous."[9]   For example, where a consumer is comparing similar,

12   though not identical, products, reference prices increase a consumer's interest

13
14   in the product by increasing the consumer's estimate of savings offered by

15   one retailer.  "[A] higher plausible reference price . . . consistently makes the

16   offer appear to be a better value than if no reference price appears."[10]

17
18   Therefore, when a retailer advertises its products with inflated reference

19   prices, consumers are harmed because they are denied the ability to

20   accurately compare prices across the market, and they imbue the advertised

21
22   product with a false sense of value that they would not have developed if the

23   inflated reference price had not been listed

24

25

26   _____

27   [9] *See id.*
     [10] *Id.*
28

13
**FIRST AMENDED CLASS ACTION COMPLAINT**

25.      Unsurprisingly, research shows that consumers prefer to get a bargain. Indeed, "shoppers sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[11] The fear of losing such a discount, because of the false impression given the retailer that the discount or sale price will not last forever, often induces the consumer to purchase quickly, without performing comparison shopping.

26.      Studies also show that consumers are driven by internal and external reference prices.[12] Internal reference prices are a consumer's price expectations based on past experiences, stored in their memory. External reference prices are prices encountered during the shopping experience, such as suggested retail prices or sale tags.[13] Research suggests that consumers adjust their internal value expectations (i.e., internal reference prices) to align with external reference prices they encounter.[14] In addition, for infrequently

---

[11] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." Journal of Consumer Psychology 13, No. 3 (2003): 328–338, at 328.
[12] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." Journal of Consumer Research 19, No. 1 (1992): 62-70, at 68.
[13] *Id*. at 62.
[14] Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of

**FIRST AMENDED CLASS ACTION COMPLAINT**

purchased items, or unique items, consumers may lack an actual internal

reference price simply because they have not priced the product previously,

and in such situations, consumers rely more heavily on the external reference

prices.

27.    Retailers, including Defendant, understand that consumers are

vulnerable to perceived bargains. Thus, Defendant has a substantial financial

interest in exploiting consumers' well-known behavioral tendencies by

inducing consumers into believing they are receiving a bargain—even when

they are not. The phenomena of people disproportionately relying on an

initial piece of information when making a decision, known as "anchoring,"[15]

is especially relevant in this context. Especially when shopping online,

consumers often encounter reference prices as the first, if not the only, insight

into a product's value besides the sale price itself. Thus, consumers use the

reference price as a baseline upon which to calculate a product's true value.

28.    Deceptive and misleading pricing such as that employed by

Defendant causes consumers to pay more than they otherwise would have

Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value,
Transaction Value, and Behavioral Intentions." The Journal of Marketing 62
(1998): 46-59, at 48.

[15] *See* Program on Negotiation, Anchoring Effect, HARV. L. SCH.,
http://www.pon.harvar d.edu/tag/anchoring-effect ("[T]he anchoring effect,
[is] the tendency for the first offer to "anchor" the bargaining that follows in
its direction, even if the offer recipient thinks the offer is out of line.").

**FIRST AMENDED CLASS ACTION COMPLAINT**

paid for products. It also misleadingly resets consumers' true value expectations by falsely representing the value of products in order to trick consumers into paying more than the products are actually worth.

29.      In addition to harming consumers, employing false reference pricing disrupts the integrity and fairness that underlies retail markets. When unethical retailers use misleading reference prices, they gain an unfair advantage over honest competitors offering similar products. In the forgoing example, if the dishonest retailer is selling a blue shirt that is purportedly valued at $50 for just $35, and the honest retailer is selling a similar $35 blue shirt for $35, the online consumer, who cannot otherwise evaluate the true value of the shirt, is more likely to buy the supposedly more valuable $50 shirt, rather than the supposedly less valuable $35 shirt. If such unlawful advertising practices remain unchecked, businesses that adhere to honest practices will continue to be unfairly disadvantaged.

30.      Defendant knew or should have known that its use of false reference prices was misleading consumers to believe that they were receiving a "sale" when, in fact, they were not. Moreover, Defendant intended for reasonable consumers to understand the "sale" prices to be new prices that Defendant had reduced from Defendant's "regular" or "former" prices. Defendant intentionally failed to disclose to Plaintiff and members of

**FIRST AMENDED CLASS ACTION COMPLAINT**

the Classes the truth about its reference prices, i.e. that the prices were fabricated, and Defendant never offered the items at the reference prices during the relevant period. Defendant intentionally sought to convey to consumers that they were receiving a true markdown.

31.    Defendant intentionally enacted a broad pricing scheme designed to mislead its customers into believing that the reference prices were the prices at which the advertised product was formerly listed and the prevailing market rate of the advertised product.

## II.    FALSE REFERENCE PRICING VIOLATES BOTH FEDERAL LAW AND STATE LAW

32.    It is well-established that false reference pricing violates federal and state law. Even so, retailers, including Defendant, continue to use the tactic because they know they will be able to increase sales and profits by tricking consumers into making purchase decisions based on the falsely-inflated reference prices. Though the information available to consumers varies between different types of products, consumers frequently lack full information about products and, as a result, often use information from retailers to make purchase decisions.

33.    California law prohibits false reference pricing practices like those used by Defendant. *See* Cal. Bus. & Prof. Code § 17501 (expressly

**FIRST AMENDED CLASS ACTION COMPLAINT**

prohibiting false former pricing schemes); *see also* Cal. Civ. Code §
1770(a)(9) (prohibiting a business from "[a]dvertising goods or services with
intent not to sell them as advertised"), and Cal. Civ. Code § 1770(a)(13)
(prohibiting a business from "[m]aking false or misleading statements of fact
concerning reasons for, existence of, or amounts of price reductions").

34.     The Ninth Circuit Court of Appeals recognizes the harm that can
come from advertising false and deceptive reference prices. In *Hinojos v.
Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), the court found that "[m]ost
consumers have, at some point, purchased merchandise that was marketed as
being 'on sale' because the proffered discount seemed too good to pass up.
Retailers, well aware of consumers' susceptibility to a bargain, therefore have
an incentive to lie to their customers by falsely claiming that their products
have previously sold at a far higher 'original' price in order to induce
customers to purchase merchandise at a purportedly marked- down 'sale'
price. Because such practices are misleading—and effective—the California
legislature has prohibited them." *Id.* at 1101.

35.     The FTC also recognizes the fraudulent nature of fictitious and
artificial sale pricing. The FTC's rules have long included "Part 233—Guides
Against Deceptive Pricing" which states in relevant part:

> One of the most commonly used forms of bargain
> advertising is to offer a reduction from the

**FIRST AMENDED CLASS ACTION COMPLAINT**

advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious
-- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such cases, the "reduced price" is, in reality, probably just the seller's regular price. 16 C.F.R § 233.1(a).

36.     The FTC guidance provides several useful examples of deceptive sales:

An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced. 16 C.F.R § 233.1(d).

## III.    DEFENDANT USED FALSE REFERENCE PRICING TO DECEIVE ITS CUSTOMERS

37.     Using deceptive pricing tactics, Defendant lures consumers by advertising its products at seemingly discounted "sale" prices compared to significantly marked-up reference prices. These fictitious reference prices are

**FIRST AMENDED CLASS ACTION COMPLAINT**

never actually charged, making the "discounts" misleading.

38.    Defendant's advertised discounts are fictitious because the reference prices do not represent a bona fide price at which Defendant previously sold, or offered to sell, the products on a regular basis, for a commercially reasonable period of time, as required by the FTC. In addition, the advertised reference prices were not the prevailing market retail price within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

39.    By way of background, the way false reference pricing is evaluated depends significantly on whether the product is exclusive or non-exclusive. Exclusive products are products that are sold exclusively by one retailer. The "prevailing market price" of an exclusive product is the price of the product at which the retailer offered that product over the three months immediately preceding the advertisements. Cal. Bus. & Prof. Code § 17501; *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 525 (C.D. Cal. 2015). Thus, if the advertised reference price of the exclusive item exceeds that prevailing market price, then the advertisement is deceptive. *Spann*, 307 F.R.D. at 525. On the other hand, non-exclusive products are products that are sold by multiple retailers. The "prevailing market price" of a non-exclusive product is determined by the prices at which multiple retailers in the market offered

that product over the three months immediately preceding the advertisements. Cal. Bus. & Prof. Code § 17501; *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1085 (C.D. Cal. 2018).

40.    Regardless of whether the item is exclusive or non-exclusive to Defendant, the higher reference price that Defendant advertises is typically a falsely inflated price because it rarely, if ever, lists or sell items at the advertised reference price. The sole purpose of the false reference price is to mislead customers into believing that the displayed reference price is a former or regular price at which Defendant or competitors sold the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount, thus inducing them to make a purchase before the "sale" ends.

41.    As a direct result of Defendant's actions, all consumers who purchased products that were advertised with false reference prices and/or misleading discounts from Defendant have been deceived and have been undeniably harmed, in that they would not have purchased these products but for the misleading pricing. They have suffered an economic injury by being misled into paying more than the products were actually worth.

42.    Defendant's false pricing scheme has directly harmed all customers who were tricked into buying discounted products. By creating a

false perception of significant savings, Defendant fraudulently inflated demand for its products. This has shifted the demand curve, allowing Defendant to charge higher prices and generate more sales than would have been possible had it used honest pricing practices.

43.     Consumers, like Plaintiffs, were deceived by Defendant's misleading discounts. They did not receive the substantial savings that were advertised, nor were the products actually worth the inflated reference prices. Moreover, consumers would not have purchased the products at the purported "sale" price but for the misleading reference price.

44.     The misleading nature of Defendant's reference prices and discounts was cleverly disguised and could not be detected by a reasonable consumer exercising due diligence, particularly because the deception was hidden over an extended period of time. The only way for a consumer to detect Defendant's deception would be if the consumer meticulously followed the price of the product every day for months, especially for a retailer such as Defendant, who regularly sells custom-labelled items (i.e., items under its own brand).

45.     Defendant continues to engage in these deceptive practices by advertising false reference prices and misleading discounts. There is no indication that it will voluntarily cease these tactics. Even if it were to stop

temporarily, there is a high risk that it would resume these deceptive practices in the future.

46.     Defendant's actions towards consumers and the general public demonstrate malice, fraud, and/or oppression. Its deceptive practices have had a significant negative impact on Plaintiffs, the Classes of affected consumers, and the public at large.

47.     The advertised reference prices and discounts for Defendant's products on Defendant's website are misleading. The "sale" price is often very close to, if not higher than, the true price for these products. The listed reference price of Defendant's products is inflated and does not reflect the actual selling price.

48.     For example, during the 99-day period from March 1, 2024, through June 8, 2024, the following products have been offered at a "discount," when in fact they were not sold at the reference price at any point during that time period:

| Product Name | Reference Price | Days Sold at Reference Price | Days "On Sale" |
|---|---|---|---|
| Men's Handsewn Moccasins, Camp Moc | $99 | 0 | 98 |
| Women's Signature Cotton Funnelneck Sweater | $119 | 0 | 98 |

**FIRST AMENDED CLASS ACTION COMPLAINT**

| | | | |
|---|---|---|---|
| Women's Boundless Performance Tights, Low- Rise | $79 | 0 | 98 |
| Women's Ultra-Soft Sweatshirt Robe | $89 | 0 | 98 |
| Women's Boundless Performance Tights, Low- Rise Graphic | $89 | 0 | 98 |
| Kid's Trucker Hat | $24.95 | 0 | 98 |
| Men's Traverse Trail Shoes | $109 | 0 | 98 |
| Men's Ridge Runner Storm Hunting Jacket | $249 | 0 | 98 |
| Men's Ridge Runner Soft- Shell Hunting Jacket, Camo | $189 | 0 | 98 |
| Men's Ridge Runner Soft- Shell Vest, Camo | $149 | 0 | 98 |
| Women's Ridge Runner Sort- Shell Jacket, Camo | $179 | 0 | 98 |
| Women's Ridge Runner Soft- Shell Hunting Pants, High-Rise, Camo | $169 | 0 | 98 |
| Men's Ridge Runner Soft- Shell Hunting Pants, Camo | $179 | 0 | 98 |
| Men's 8" Bean Boots, Chamois-Lined | $159 | 0 | 98 |
| Women's Snow Sneakers 4 with Arctic Grip, Low Lace- Up | $159 | 0 | 98 |
| Men's Storm Chaser Boots 4, Lace-Up with Arctic Grip | $179 | 0 | 98 |

**FIRST AMENDED CLASS ACTION COMPLAINT**

49.     The reference chart above contains merely a fraction of those products listed as "discounted" on L.L. Bean's website when, in fact, they were not listed any time for the referenced price in the preceding 90 days.

50.     The below screen shot is an example of how Defendant presents its deceptive pricing to consumers. It shows the Men's Ridge Runner Soft Shell Vest, Camo print, listed at a discount price of $129.00, which reflects a 13% savings off the "reference" price of $149.00. This screenshot is from February 19, 2024.



51.     Approximately two months later, on April 22, 2024, the Men's Ridge Runner Soft Shell Vest, Camo print, was still listed at a supposedly discounted price of $129.00, reflecting a 13% savings off the "reference" price of $149.00.

**FIRST AMENDED CLASS ACTION COMPLAINT**



52.     Approximately two more months later, on June 24, 2024, the Men's Ridge Runner Soft Shell Vest, Camo print, was still listed at a supposedly discounted price of $129.00, reflecting a 13% savings off the claimed "reference" price of $149.00.



53.     And approximately two more months later, on August 26, 2024,

**FIRST AMENDED CLASS ACTION COMPLAINT**

the Men's Ridge Runner Soft Shell Vest, Camo Print, was still listed at a supposedly discounted price of $119.00, reflecting a 20% savings off the claimed "reference" price of – still - $149.00



54.      For a significant and uninterrupted period of time over several months, Defendant ran what appeared to be sales on many of its products. These supposed discounts were often substantial, reaching up to 70%. Even though the exact discount amount might fluctuate slightly, the products were advertised as on "sale;" however, all or nearly all the advertised sale products are never actually offered for purchase or sold at the reference price.

55.      Based on Defendant's advertisements, reasonable consumers would expect that the listed former prices are the "regular" prices at which Defendant sells that product; that these are former prices that Defendant sold

the product at before the discount was introduced, and that these are the prevailing prices.

56.      Reasonable consumers would expect that, if they purchase an item during a sale, they will receive an item for which the regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

57.      Consumers, including Plaintiffs and putative Class members, paid a "price premium" for the products that they otherwise would not have paid if the reference prices that Defendant used were omitted from the product listings. Or, consumers would not have purchased the products at all, and Defendant would not have been able to charge the prices it ultimately did.

## IV.    PLAINTIFFS FELL VICTIM TO DEFENDANT'S DECEPTIVE PRACTICES

58.      Plaintiff Cook is, and at all relevant times has been, a resident and citizen of the State of California. On or around June 6, 2024, Plaintiff Cook visited Defendant's website while in her home in California and purchased a kid's trucker hat.

59.      Plaintiff Cook saw on the listing page a former price of $24.95 which was stricken through. She added the hat to her cart then proceeded to purchase the product for $9.99 before tax with the understanding that she was

**FIRST AMENDED CLASS ACTION COMPLAINT**

receiving all advertised discounts off the former price charged by Defendant.
The product was shipped to her address in Loma Linda, California

60.       Defendant's website presented an "Item Price," which was the
reference price, above the lower "Sale Price." The below image represents
what Plaintiff Cook saw when she purchased the hat.



61.       After seeing the reference price of $24.95, Plaintiff Cook
specifically chose to purchase the product because she believed she was
receiving a significant discount on the product she had chosen. Because she
was interested in the product and felt that the discounted price would likely
not last, and that she was getting a significant bargain on the product, Plaintiff
Cook chose to immediately move forward with purchasing it. As a reasonable
consumer, she trusted that the products had a value commensurate with the
reference price. Thus, the advertised "sale" appeared to be a genuine

discount.

62.     Relying on the advertised savings, Plaintiff Cook added the product to her cart and completed the purchase. A copy of the receipt is attached hereto as **Exhibit A**.

63.     The item purchased by Plaintiff Cook was not listed for sale on Defendant's website at the "reference" price of $24.99 in the three months preceding her purchase date, when she viewed the advertised sale. Indeed, every day during the three-month period preceding her purchase, the item purchased by Plaintiff Cook was listed on Defendant's website with a reference price of $24.95, and a sale price of $9.99.

64.     Unbeknownst to Plaintiff Cook, Defendant rarely, if ever, offered its products at the advertised "regular" reference prices, and did not do so for the product Plaintiff Cook purchased at any time in the 90 days prior to that purchase. Simply put, Defendant intentionally deceived Plaintiff Cook. The actual value of the product purchased did not match the inflated reference price Plaintiff Cook was led to believe was the true value of the hat. Thus, the advertised "sale" wasn't a deal, or even a sale, at all.

65.     Plaintiff Cook thus viewed and relied on the website's purported then-current and possibly limited time, "sale." She relied on the above representations that the product (1) had a former price of the advertised strike-

**FIRST AMENDED CLASS ACTION COMPLAINT**

through price, and (2) had been offered for sale on the website at the stated reference price, in the recent past, at least for the statutory period, on a regular basis, and for a substantial time. And she relied on the representations that the product was truly on sale and being sold at a substantial markdown.

66.    Defendant's inflated reference prices and misleading discounts were significant and material misrepresentations that directly influenced Plaintiff Cook's purchase. She relied on this false information in good faith. Had she known the truth, she would not have bought the product for the price that she did.

67.    Defendant's misrepresentations were material because a reasonable consumer relies on such information when making purchasing decisions.

68.    As a direct consequence of Defendant's actions, Plaintiff Cook was financially harmed.  She would not have purchased the product at the same price absent Defendant's misrepresentation. The advertised discounts were illusory, and the products were not worth the reference price listed by Defendant, as Plaintiff Cook was led to believe.

69.    Plaintiff Moore is, and at all relevant times has been, a resident and citizen of the State of California. On or around March 24, 2025, Plaintiff Moore visited Defendant's website and purchased a shirt.

**FIRST AMENDED CLASS ACTION COMPLAINT**

70.      Plaintiff Moore saw on the listing page a former price of $39.95 which was stricken through. She added the shirt to her cart then proceeded to purchase the product for $29.99 before tax with the understanding that she was receiving all advertised discounts off the former price charged by Defendant. The product was shipped to her address in Clovis, California

71.      Defendant's website presented an "Item Price," which was the reference price, above the lower "Sale Price." The below image represents what Plaintiff Moore saw when she purchased the shirt:



72.      After seeing the reference price of $39.95, Plaintiff Moore specifically chose to purchase the product because she believed she was receiving a significant discount on the product she had chosen. Because she was interested in the product and felt that the discounted price would likely not last, and that she was getting a significant bargain on the product, Plaintiff Moore chose to immediately move forward with purchasing it. As a

**FIRST AMENDED CLASS ACTION COMPLAINT**

reasonable consumer, she trusted that the products had a value commensurate with the reference price. Thus, the advertised "sale" appeared to be a genuine discount.

73.    Relying on the advertised savings, Plaintiff Moore added the product to her cart and completed the purchase. A copy of the receipt is attached hereto as **Exhibit B**.

74.    The item purchased by Plaintiff Moore was not listed for sale at the "reference" price of $39.99 in the three months preceding her purchase and the advertised sale.  Indeed, every day during the three-month period preceding her purchase, the item purchased by Plaintiff Moore was listed on Defendant's website with a reference price of $29.95, and a sale price of $29.99.

75.    Unbeknownst to Plaintiff Moore, Defendant rarely, if ever, offered its products at the advertised "regular" reference prices, and did not do so for the product Plaintiff Moore purchased at any time in the 90 days prior to that purchase. Simply put, Defendant intentionally deceived Plaintiff Moore. The actual value of the product purchased did not match the inflated reference price Plaintiff Moore was led to believe was the true value of the shirt. Thus, the advertised "sale" wasn't a deal, or even a sale, at all.

76.    Plaintiff Moore thus viewed and relied on the website's

**FIRST AMENDED CLASS ACTION COMPLAINT**

purported then-current and possibly limited time, "sale." She relied on the

above representations that the product (1) had a former price of the advertised

strike-through price, and (2) had been offered for sale on the website at the

stated reference price, in the recent past, at least for the statutory period, on a

regular basis, and for a substantial time. And, she relied on the representations

that the product was truly on sale and being sold at a substantial markdown.

77.    Defendant's inflated reference prices and misleading discounts

were significant and material misrepresentations that directly influenced

Plaintiff Moore's purchase. She relied on this false information in good faith.

Had she known the truth, she would not have bought the product for the price

that she did.

78.    Defendant's misrepresentations were material because a

reasonable consumer relies on such information when making purchasing

decisions.

79.    As a direct consequence of Defendant's actions, Plaintiff Moore

was financially harmed.  She would not have purchased the product at the

same price absent Defendant's misrepresentation. The advertised discounts

were illusory, and the products were not worth the reference price listed by

Defendant, as Plaintiff Moore was led to believe

80.    Moreover, Plaintiffs and other consumers were damaged because

**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant's false pricing scheme inflated the true market value of the items

they purchased. Even though Defendant's false pricing scheme is pervasive

on its website, not every advertised sale is in fact false, and as such, without

substantial effort, Plaintiffs and other consumers cannot know which sales

are false and which are true. Thus, Plaintiffs are susceptible to this

reoccurring harm because they cannot be certain that Defendant has corrected

its deceptive pricing scheme, and they desire to shop at Defendant's website

in the future. Plaintiffs do not have the resources to always (or even regularly)

determine whether Defendant is complying with state and federal law with

respect to its pricing practices by watching the price over the course of several

months.

81.    Plaintiffs have the legal right – now and in the future – to expect

truthful and accurate information from Defendant regarding advertised prices

and discounts. Plaintiffs, and the other members of the Classes, will be

harmed if, in the future, they are left to guess as to whether Defendant is

providing a legitimate sale, and whether products are actually worth the

amount that Defendant is representing. If Plaintiffs were to trust that

Defendant has reformed its practices and were to purchase again from

Defendant, they would have no way of knowing if the advertised discounts

were legitimate. Plaintiffs continue to be interested in purchasing products

**FIRST AMENDED CLASS ACTION COMPLAINT**

that are sold by Defendant and offered at discounted prices, but they will be
unable to trust and rely on Defendant's website pricing. Absent injunctive
relief, Plaintiffs cannot know whether Defendant's reference prices represent
true former prices, and a true value of the item, or inflated reference prices
employed in order to deceive customers into believing that a legitimate
discount is being offered. Thus, Plaintiffs will be harmed on an ongoing basis
and/or will be harmed once or more in the future.

82.    The deceptive practices described herein are not limited to the
specific products Plaintiffs purchased or categorical group of products. The
misleading advertising and sales tactics employed by Defendant are
systematic and widespread across its entire website, impacting customers
nationwide.

## V.    CLASS DEFINITION AND ALLEGATIONS

83.    Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3)
of the Federal Rules of Civil Procedure on behalf of themselves and on behalf
of all other persons similarly situated.

84.    Plaintiffs propose the following Class definitions, subject to
amendment as appropriate:

> **Nationwide Class (the "Nationwide Class" or
> "Class")**
> All individuals who, within the applicable

**FIRST AMENDED CLASS ACTION COMPLAINT**

limitations period, purchased from the Defendant's
website one or more products that were advertised
or promoted by displaying or disseminating a
reference price or discount for an item that was not
advertised for sale at the reference price at any point
in the 90 days preceding their purchase.

**California Subclass ("California Subclass" or
"Subclass")**

All individuals who, within the applicable
limitations period, purchased from the Defendant's
website one or more products that were advertised
or promoted by displaying or disseminating a
reference price or discount for an item that was not
advertised for sale at the reference price at any point
in the 90 days preceding their purchase.

85.     Excluded from the Class and Subclass (collectively "Classes")
are Defendant, its parents, subsidiaries, affiliates, officers and directors, and
judicial officers and their immediate family members and associated court
staff assigned to this case.

86.     Plaintiffs reserve the right to modify or amend the definitions of
the proposed Classes before the Court determines whether certification is
appropriate.

87.     The proposed Classes meet the criteria for certification under
Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

88.     **Numerosity:** This action is appropriately suited for a class
action. The members of the Classes are so numerous that the joinder of all
members is impracticable. Upon information and belief, the proposed Classes

**FIRST AMENDED CLASS ACTION COMPLAINT**

contain well over 100 members, and likely thousands of individual purchasers who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

89.     **Commonality:** This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendant made false or misleading statements of fact in its advertisements;

b.     Whether Defendant's policies and actions regarding its advertising were unfair, deceptive, or misleading;

c.     The accuracy of Defendant's advertised reference prices and discounts;

d.     Whether Defendant breached its contract with Plaintiffs and the Class members;

e.     Whether Defendant was unjustly enriched as a result of its actions with respect to reference pricing and discounts advertised;

f.     Whether the alleged conduct of Defendant violates California Civil Code §§ 1750 *et seq*., California Business & Professions Code §§ 17500 *et seq*., California Business & Professions Code §§ 17501 *et seq* and/or California Business & Professions Code §§ 17200 *et seq*.

g.     Whether Plaintiffs and the members of the Classes have suffered injury and have lost money or property as a result of such false or misleading discounts and reference prices;

**FIRST AMENDED CLASS ACTION COMPLAINT**

h.    Whether Defendant should be enjoined from further engaging in the misconduct alleged herein.

i.    Whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

90.    **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Classes, because, *inter alia*, Plaintiffs and all members of the Classes purchased Defendant's products advertised at a discount on Defendant's website. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Classes. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as all other members of the proposed Classes.

91.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the members of the Classes and Defendant has no defenses that are unique to Plaintiffs.

92.    **Superiority:** A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small

**FIRST AMENDED CLASS ACTION COMPLAINT**

compared to the burden and expense that would be created by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Classes, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase delay and expense to all parties and the court system arising from such individual claims. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

93.    Plaintiffs seek monetary damages, including compensatory damages on behalf of the Classes, and other equitable relief on grounds generally applicable to the Classes as a whole and to the public. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Classes will have suffered damages. Unless a Class-wide injunction is issued, Defendant will likely continue to benefit from the violations alleged, and the members of the Classes and the general public will likely continue to be victimized.

**FIRST AMENDED CLASS ACTION COMPLAINT**

94.    Defendant has acted and refused to act on grounds generally applicable to the Classes, making final injunctive relief appropriate with respect to the Classes as a whole.

95.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiffs and members of the Classes could not have reasonably discovered Defendant's practice of running perpetual and/or extended sales, based on deceptive reference prices and deceptive sale prices, at any time prior to commencing this class action litigation.

96.    A reasonable consumer viewing Defendant's website on multiple occasions would simply believe that a product just happens to be on sale when the consumer is on the website. Short of visiting and checking the website for months continuously, or creating automated means of recording the price over a substantial period of time, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false or misleading. Nor would a reasonable consumer be able to ascertain the true value of the products being sold absent extensive investigation, which reasonable consumers would not be on notice to have to do.

97.    Plaintiffs did not learn of Defendant's deceptive practices alleged herein until shortly before retaining counsel in this action.

98.    As a result, any and all applicable statutes of limitations

**FIRST AMENDED CLASS ACTION COMPLAINT**

otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

### COUNT I
### FRAUD – INTENTIONAL MISREPRESENTATION AND OMISSION
**(On behalf of Plaintiffs and the Class)**

99.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–98  as if fully set forth herein.

100.     Defendant made false and misleading statements of fact and material omissions concerning the existence reference prices and the amounts of price reductions. These representations were false because the false reference prices advertised in connection with products offered on the website misled, and continues to mislead, consumers into believing the products were previously sold on the website at the higher reference prices, when in fact they were not. Defendant knew that these representations were false at the time that it made them and/or acted recklessly in making the misrepresentations.

101.     Defendant had a duty to accurately disclose the truth about its pricing information, including that the reference prices advertised on the website were not truly former prices and that the "discount" price advertised was not truly a discount. Reasonable consumers were likely to be deceived,

and were deceived, by Defendant's failure to disclose material information.

102.    Defendant knew that the items Plaintiffs and the members of the Class purchased had rarely, if ever, been offered or sold on the website at the higher reference price in the recent past.

103.    Defendant's representations were made with the intent that Plaintiffs and the members of the Class would rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive pricing scheme.

104.    Defendant employed this scheme in order to incentivize consumers with the sole intent of maximizing profits to the detriment of those same consumers.

105.    Defendant intended that Plaintiffs, and all members of the Class, rely on Defendant's false representations. Plaintiffs and all members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiffs and the members of the Class would not have purchased the items from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class members' reliance was a substantial factor in causing their harm.

**FIRST AMENDED CLASS ACTION COMPLAINT**

106.     Had the true reference price not been omitted, Plaintiffs and the

members of the Class reasonably would have behaved differently. Among

other things, they would not have purchased the items they purchased from

Defendant or, at the very least, would not have paid as much for the items as

they ultimately did.

107.     As a direct and proximate result of the above, Plaintiffs and the

members of the Class have suffered damages because: (a) they would not

have purchased Defendant's products if they had known that the

representations were false, and/or (b) they overpaid for the products because

the products were sold at a premium price due to the misrepresentations.

108.     Plaintiffs and the members of the Class are also entitled to

punitive or exemplary damages. Defendant, through its senior executives and

officers, undertook the illegal acts intentionally or with conscious disregard

of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or

oppression.

109.     Based on the allegations above, Defendant's actions were

fraudulent because Defendant intended to and did deceive and injure

Plaintiffs and the members of the Class. Based on the allegations above,

Defendant's conduct was made with malice because Defendant acted with

the intent to cause and did cause injury to Plaintiffs and all members of the

Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiff and all members of the Class.

## COUNT II
### NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiffs and the Class)

110.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 – 109 as if fully set forth herein.

111.    As alleged more fully herein, Defendant made false or misleading statements and/or material omissions of fact concerning the existence of and the amounts of price reductions because Defendant falsely represents the products as on sale, when in truth the reference price was a fictitious price, rendering the purported "sale" a fictitious discount. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

112.    By choosing to advertise a reference price, Defendant had a duty to accurately disclose the truth about its pricing, including the fact that the reference prices advertised and published on the website were not truly former prices and that the "discount" price advertised was not a true discount.

113.    Defendant knew its sales were falsely advertised with a false reference price. Defendant also knew or should have known that the reference

**FIRST AMENDED CLASS ACTION COMPLAINT**

prices were not the prevailing market prices or true value of the products. Defendant further knew that the items Plaintiffs and the Class purchased had rarely, if ever, been offered or sold on the website at the false reference price.

114.    Defendant had no good faith or reasonable basis to believe that its representations were true when made.

115.    Defendant's representations were made with the intent that Plaintiff and the members of the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive pricing scheme.

116.    Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e. a reasonable consumer would consider them important in deciding whether to buy Defendant's products.

117.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damage and losses to Plaintiffs and the members of the Class.

118.    Defendant engaged in this fraud to the Plaintiffs and the Class members' detriment to increase Defendant's own sales and profits.

119.    Plaintiffs and the members of the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations,

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs and the members of the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiffs and the Class members' reliance was a substantial factor in causing them harm.

120.    Had the omitted information been disclosed, Plaintiffs and the members of the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

121.    As a direct and proximate result of the above, Plaintiffs and the members of the Class have suffered damages because they would not have purchased Defendant's products if they had known that the representations were false, and/or they overpaid for the products because the products were sold at a price premium due to the misrepresentations.

**COUNT III**
**BREACH OF CONTRACT**
**(On behalf of Plaintiffs and the Class)**

122.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–121 as if fully set forth herein.

123.    Defendant offered products for sale to Plaintiffs and the members of the Class under the terms advertised on Defendant's website.

47

124.     The terms of Defendant's offer provided that Defendant would sell Plaintiffs and the members of the Class products that have a market value equal to the reference prices displayed. The terms also required that Defendant provide Plaintiffs and the members of the Class with the discount listed on Defendant's website.

125.     The specific discount was a material term of each contract.

126.     The terms of the offer also provided that Plaintiffs and the members of the Class would pay Defendant for the products purchased.

127.     Plaintiffs and the members of the Class accepted Defendant's offer and paid Defendant for the products they ordered, thereby satisfying all conditions of their contracts.

128.     Defendant breached the contracts with Plaintiffs and the members of the Class by failing to provide products that had a market value equal to the reference price displayed on its website, and by failing to provide the promised discount.

129.     As a direct and proximate result of Defendant's breaches, Plaintiffs and the members of the Class were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

## **COUNT IV**

## UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the members of the Class)

130.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–129 as if fully set forth herein.

131.    Plaintiffs bring this claim in the alternative to the contract-based claims, including the breach of contract claim.

132.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

133.    Plaintiffs and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when it initiated its false pricing scheme.

134.    Plaintiffs and members of the Class were, and many continue to be, consumers of Defendant's products. They reasonably believed that Defendant would not falsely advertise discounted products. Plaintiffs and members of the Class suffered financial losses when they were deceived into purchasing products that they reasonably believed to be on sale. By inflating the reference price and then offering a "sale," Defendant creates a false sense of urgency, a misleading perception of value, and a misleading perception of savings, tricking customers into paying more than they should or would for Defendant's product. Customers who rely on advertised sales to make

**FIRST AMENDED CLASS ACTION COMPLAINT**

informed decisions are deceived into paying a premium for the product and do not receive a product worth as much as Defendant represented the product to be worth.

135.    This deceptive practice undermines fair competition and allows Defendant to profit unfairly. Defendant has accepted and retained these benefits as a result of its sales of merchandise offered at a false discounted price, making Defendant's retention of them unjust.

136.    By its wrongful acts and omission described herein, including engaging in deceitful and misleading advertising practices by using false discounts to lure in consumers to purchase products they would not have otherwise purchased or for amounts they would not have otherwise paid, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

137.    Plaintiffs' and the Class members' detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

138.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the members of the Class. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**

139.    Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

140.    Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

141.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## COUNT V
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On behalf of Plaintiffs and the California Subclass)**

142.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–141 as if fully set forth herein.

143.    Plaintiffs bring this claim individually and on behalf of the members of the California Subclass against Defendant.

144.    Plaintiffs and all members of the California Subclass are "persons" and "consumers" as defined in Cal. Civ. Code § 1761(d).

145.    Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

51
**FIRST AMENDED CLASS ACTION COMPLAINT**

146.    The products purchased by Plaintiffs and the members of the

California Subclass from Defendant are "goods" as defined by Cal. Civ. Code

§ 1761(a).

147.    Plaintiffs' and the California Subclass members' purchases from

Defendant constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

148.    The CLRA prohibits "unfair methods of competition and unfair

or deceptive acts or practices undertaken by any person in a transaction

intended to result or which results in the sale or lease of goods or services to

any consumer." Cal. Civ. Code § 1770.

149.    As alleged herein, Defendant engaged in unfair and deceptive

acts or practices insofar as it made and disseminated false and misleading

statements of facts in its advertisements to class members by using false

reference prices and advertising fake discounts in violation of the CLRA. *See

Id.*

150.    Defendant's conduct as described herein was and is in violation

of the CLRA. Defendant's conduct violates at least the following enumerated

CLRA provisions:

> a. Cal. Civ. Code § 1770(a)(5): Representing that goods or
> services have characteristics, uses, benefits, or quantities
> that they do not have or that a    person has a sponsorship,
> approval, status, affiliation, or connection that the person
> does not have;

b. Cal. Civ. Code § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and

c. Cal. Civ. Code § 1770(a)(13): Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

151.    Defendant has violated Section 1770(a)(5) by representing that products offered for sale on its website have characteristics or benefits that they do not have. Specifically, Defendant represents that the value of its products is greater than it actually is by advertising inflated reference prices and false discounts.

152.    Defendant has violated Section 1770(a)(9) by advertising its products as being offered at a discount, when in fact Defendant does not intend to sell the products at a discount.

153.    Defendant has violated Section 1770(a)(13) by misrepresenting the regular reference price of products on its website and by advertising false discounts and savings.

154.    Defendant's practice of misrepresenting, actively concealing, and/or failing to disclose the true prices of the products listed on its website violated and continues to violate the CLRA.

155.    Defendant's misrepresentations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should

**FIRST AMENDED CLASS ACTION COMPLAINT**

have known, that these statements were inaccurate and misleading.

156.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on them when making her purchase. Defendants' misrepresentations were a substantial factor in Plaintiffs' purchase decision.

157.    Defendant's deceptive practices significantly impacted Plaintiffs and the members of the California Subclass. The misleading information presented was material, meaning a reasonable person would consider it heavily when deciding to buy products. This false information directly caused financial harm. Plaintiffs and the members of California Subclass ended up purchasing goods they otherwise would not have purchased or spending more than the products' true value.

158.    Class-wide reliance can be inferred because Defendant's misrepresentations were material, in that a reasonable consumer would consider them important when deciding whether to buy a product and how much to pay for a product.

159.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the members of the California Subclass.

160.    Plaintiffs and the members of the California Subclass were

**FIRST AMENDED CLASS ACTION COMPLAINT**

injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were sold at a price premium due to the misrepresentation.

161.    Accordingly, pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the California Subclass, seek injunctive relief.

162.    The practices outlined above have caused significant harm to Plaintiffs, the California Subclass, and the public at large. Plaintiffs and the California Subclass members' injuries were proximately caused by Defendant's unlawful and deceptive business practices. These unlawful and unfair practices are ongoing and will likely continue unless stopped. Therefore, Plaintiffs seek a permanent injunction to prevent Defendant from engaging in such deceptive tactics. Additionally, Plaintiffs seek compensation for attorney fees and costs incurred. Finally, under the CLRA, Plaintiffs seek a public injunction to protect the general public from Defendant's misleading advertising and omissions.

163.    Pursuant to Cal. Civ. Code § 1782(a), on July 31, 2024, Plaintiff's counsel served Defendant with notice of its CLRA violations by certified mail, return receipt requested. Defendant acknowledged receipt of

1    the CLRA demand notice on August 6, 2024.

2    164.    Defendant has refused or failed to timely respond to the CLRA
3
4    demand notice. Defendant has failed to provide appropriate relief for its
5    CLRA violations within 30 days of its receipt of Plaintiffs' demand notice.
6
7    Accordingly, pursuant to §§ 1780 and 1782(b) of the CLRA, Plaintiffs are
8    entitled to recover actual damages, punitive damages, attorneys' fees and
9    costs, and any other relief the Court deems proper.

10                             **<u>COUNT VI</u>**
11         **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
                              ("FAL")**
12           **Cal. Bus. & Prof. Code §§ 17501 *et seq.*
13        (On behalf of Plaintiffs and the California Subclass)**

14    165.    Plaintiff repeats and realleges each and every allegation
15
16    contained in paragraphs 1–164 as if fully set forth herein.

17    166.    Plaintiffs bring this claim individually, and on behalf of the
18
19    members of the California Subclass against Defendant.

20    167.    Defendant has violated Section 17501 of the California Business
21
22    and Professions Code.

23    168.    Defendant has engaged in false or misleading advertising in
24
25    violation of the FAL. Defendant advertised, and continues to advertise,
26    reference prices and "sale" prices that are false, misleading and/or have the
27    tendency and likelihood to deceive reasonable consumers. *Brady v. Bayer*

28

*Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) ("these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"). To state a claim under the FAL "'it is necessary only to show that "members of the public are likely to be deceived."' *Id.* (citations omitted).

169.    Defendant engaged in deceptive advertising practices within California and nationwide. These practices involved promoting its products through online platforms that contained untrue or misleading statements about the advertised goods. Notably, Defendant knew, or should have known with reasonable diligence, the information it disseminated was inaccurate.

170.    As alleged more fully above, Defendant advertises reference prices on its website along with discounts.

171.    The reference prices advertised by Defendant were not the prevailing market prices for the products within three months preceding publication of the advertisement.

172.    Defendant's reference price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former reference prices prevailed. Indeed, the advertisements do not indicate whether or when the purported former reference prices were offered at all.

**FIRST AMENDED CLASS ACTION COMPLAINT**

173.    The deceptive advertising practices employed by Defendant led Plaintiffs and the members of the California Subclass to make decisions based on inaccurate information. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on these misrepresentations when making her purchase decision.

174.    Class-wide reliance can be inferred because Defendant's misrepresentations were material.

175.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiffs and the members of the California Subclass.

176.    Plaintiffs and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were sold at a price premium due to the misrepresentation.

**<u>COUNT VII</u>**
**Violation of California's False Advertising Law, Bus & Prof. Code**
**§§17500 *et seq*.**
**(On behalf of Plaintiffs and the California Subclass)**

177.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–176 as if fully set forth herein.

**FIRST AMENDED CLASS ACTION COMPLAINT**

178.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

179.    Defendant has violated Section 17500 of the California Business and Professions Code.

180.    As alleged more fully above, Defendant has made and disseminated false and misleading statements of facts in its advertisements to Plaintiffs and the California Subclass members by advertising false reference prices and false discounts regarding its products.

181.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known, that these statements were inaccurate and misleading.

182.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs reasonably relied on the statements when purchasing the products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

183.    Class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the price of the product.

184.    Defendant's misrepresentations were a substantial factor and proximate cause in damages to Plaintiffs and the members of the California

**FIRST AMENDED CLASS ACTION COMPLAINT**

1  Subclass.

2      185.    Plaintiffs and the members of the California Subclass were

3  injured as a direct and proximate result of Defendant's conduct because they

4  would not have purchased the products if they had known the truth, and/or

5  they overpaid for the products because the products were sold at a price

6  premium due to the misrepresentation.

7

8

9                        **COUNT VIII**
      **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
10                        **("UCL")**
                **Bus. Prof. Code §§ 17200, *et seq.***
11      **(On behalf of Plaintiffs and the California Subclass)**

12

13      186.    Plaintiffs repeat and reallege each and every allegation contained

14  in paragraphs 1–185 as if fully set forth herein.

15

16      187.    Plaintiffs bring this claim individually and on behalf members of

17  the California Subclass.

18

19      188.    The UCL prohibits and provides civil remedies for unfair

20  competition. Its purpose is to protect both consumers and competitors by

21  promoting fair competition in commercial markets for goods and services. In

22  service of that purpose, the California legislature framed the UCL's

23  substantive provisions in broad, sweeping language. By defining unfair

24  competition to include any "any unlawful, unfair or fraudulent business act

25  or practice," the UCL permits violations of other laws to serve as the basis of

26

27

28
                        60

an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

189.    Defendant's acts and omissions alleged herein, specifically Defendant's violations of the CLRA and FLA, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL.

190.    Defendant's actions and omissions have violated, and continue to violate, the "unlawful" prong of the UCL by creating misleading advertisements with inflated reference prices and false discounts. Additionally, Defendant has engaged in deceitful practices as outlined in Cal. Civ. Code §§ 1705, 1709, and 1713. Further, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing scheme violates the FTCA. 16 C.F.R. §§ 233.1, *et seq.*

191.    As further alleged herein, Defendant's conduct also violates the "deceptive" prong of the UCL in that Defendant's representations that its products were on sale, that the sale was limited in time, that the products had a specific regular price, and that the customers were being offered discounts

**FIRST AMENDED CLASS ACTION COMPLAINT**

from a higher value, were false and misleading.

192.    Defendant's material misrepresentations, omissions, and lack of disclosure are likely to mislead reasonable and potential customers, along with the general public. These practices are inherently deceptive and mislead consumers.

193.    Plaintiffs and the members of the California Subclass relied upon Defendant's misrepresentations and omissions, as set forth above.

194.    Defendant's misrepresentations and omissions are significant because a reasonable consumer would consider this information when making purchasing decisions. Plaintiffs reasonably relied upon this misleading information and would have acted differently if they had been presented with accurate details. Similarly, class-wide reliance can be inferred because Defendant's misrepresentations were material in that they concerned the price of the product.

195.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

196.    Defendant violated the "unfair" prong of the UCL by falsely representing that that its products were on sale, that the sale was limited in time, that the products had a regular reference price higher than the sale price, and that the customers were receiving discounts.

**FIRST AMENDED CLASS ACTION COMPLAINT**

197.    Defendant violated established public policy by violating the CLA, the FAL, and the FTCA.

198.    Defendant's misrepresentations and omissions resulted in it receiving more money from Plaintiffs and the members of the California Subclass than it rightfully deserved. This money is subject to restitution. As a direct consequence of Defendant's unfair, unlawful, and deceptive practices, Plaintiffs and the members of the California Subclass suffered financial losses.

199.    Plaintiffs and the members of the California Subclass were injured as a direct and proximate result of Defendant's conduct because they would not have purchased the products if they had known the truth, and/or they overpaid for the products because the products were not worth the "regular" reference price represented by Defendant.

200.    The harm to Plaintiffs and the members of the California Subclass greatly outweighs the public utility of Defendant's conduct.  False statements in connection with the sale of consumer products harms consumers and injures competition.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.

201.    Plaintiffs and the members of the California Subclass could not

**FIRST AMENDED CLASS ACTION COMPLAINT**

have reasonably avoided the injury caused by Defendant.

202.    Without an injunction, Defendant will continue to harm Plaintiffs, the members of the California Subclass, and prospective consumers at large. Defendant's misrepresentations and omissions are ongoing, and even if it were to stop temporarily, there is a risk of it repeating these deceptive practices.

203.    Plaintiffs, on behalf of themselves and all members of the California Subclass, seeks public injunctive relief under the UCL to safeguard the general public from Defendant's deceptive discount advertising and misleading omissions.

204.    Defendant's actions have caused substantial harm to Plaintiffs, the California Subclass, and the public. These practices are ongoing and are likely to continue unless stopped.

205.    Therefore, Plaintiffs seek a permanent injunction to prevent Defendant from engaging in such unlawful, unfair, and fraudulent business practices. Additionally, Plaintiffs seek restitution for the California Subclass in an amount to be determined at trial, as well as attorney fees and costs under Cal. Code Civ. Proc. § 1021.5. Further Plaintiffs, on behalf of the members of the California Subclass, request that they be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

**FIRST AMENDED CLASS ACTION COMPLAINT**

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendant as follows:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as a representatives of the Classes and Plaintiffs' undersigned attorneys as Class Counsel to represent the Classes;

B.    For an Order declaring that Defendant's conduct violated the laws referenced herein;

C.    For an Order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D.    For an Order awarding actual, statutory, treble, and punitive damages as applicable;

E.    For an Order awarding pre-judgment and post-judgment interest on all amounts awarded;

F.    For injunctive relief as pleaded or as the Court may deem proper;

G.    For disgorgement and restitution to Plaintiffs and the members of the Classes of all monies received or collected from Plaintiffs and the members of the Classes and all other forms of equitable relief;

H.    For an Order awarding reasonable attorneys' fees and expenses

**FIRST AMENDED CLASS ACTION COMPLAINT**

and costs of suit; and

      I.     For such other and further relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

    Plaintiff hereby demands trial by jury as to all triable issues.

Dated: March 31, 205           Respectfully submitted,

<br>

By: /s/Lisa R. Considine
Kyle McLean (SBN 330580))
Lisa R. Considine*
David J. DiSabato*
Leslie L. Pescia*
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: ddisabato@sirillp.com
Email: lpescia@sirillp.com
*Attorneys for Plaintiff and the Proposed Class*

*Admitted Pro hac vice*

**FIRST AMENDED CLASS ACTION COMPLAINT**